IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**NIRIN WALLS,**
**#R49110,**

        **Plaintiff,**

v.

**ROB JEFFREYS,**
**LANA NALEWAJKA,**
**JOHN/JANE DOE,**
**DOCTOR SHAH,**
**JODI A. PELEGRIN,**
**GARY REAGAN, and**
**SHERRY BENTON,**

        **Defendants.**

Case No. 21-cv-01369-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    This case was severed from *Walls v. Jeffreys, et al.,* No. 21-cv-01350-SMY, on November 1, 2021. (Doc. 1). The claims now before the Court are limited to Walls's allegations regarding inadequate medical care that occurred while he was incarcerated at Centralia Correctional Center. As Walls was advised, those claims are subject to preliminary review pursuant to 28 U.S.C. §1915A.(*See* Doc. 1, p. 6).

    Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Page 1 of 9

## THE COMPLAINT

Walls makes the following allegations in the Complaint (Doc. 2): In July 2020, Walls began urinating blood, white blood cells, and mucus. He saw Dr. Shah and Nurse Sarah but they did not prescribe any medication for his condition. After several sick call requests, Walls saw Dr. Pelegrin who prescribed an antibiotic and, when it did not work, a second antibiotic was prescribed. When the second antibiotic did not help, Walls asked Dr. Pelegrin to send him to the emergency room, but she refused. At that time, he also complained of severe pain in his testicles and stomach. Dr. Pelegrin then prescribed phenazopyridine. After Walls took that medication, the bleeding became worse. The blood in his urine increased from "++" in August 2020 to "50" in December 2020.

Walls had an appointment with an outside urologist, Dr. Gary Reagan, on November 24, 2020. Dr. Reagan refused to examine him or collect a urine sample because Walls had not been quarantined or given a Covid-19 test prior to the appointment. Dr. Reagan told Walls he did not understand why Dr. Pelegrin had continued to prescribe antibiotics after the first antibiotic did not work and he should have been sent to a urologist sooner. Dr. Reagan told Walls that he needed an ultrasound and KUB at Centralia, and Walls should then return for a cystoscopy.

After Walls returned to Centralia from the appointment with Dr. Reagan, he refused to leave the health care unit because he was in so much pain. He was written a disciplinary ticket and taken to segregation. The next day, Warden Monti and Major Johnson release him after he explained the issue and the disciplinary ticket was expunged.

On December 9, 2020, the pain increased and Walls felt like he was urinating nails. Dr. Pelegrin did not take any action. Dr. Pelegrin did not follow-up with the diagnostic tests recommended by Dr. Reagan and did not prescribe Wall any pain medication or any other medicine for his condition. Dr. Pelegrin allowed Wall to be transferred to Dixon Correctional Center in

February 2021 despite the fact that he should have had two medical holds to prevent his transfer. She also failed to send Wall for an audiologist appointment. Healthcare Unit Administrator Nalewajka should not have approved Wall to be transferred to Dixon, which caused a delay in treatment for his medical issues.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

> **Count 1:** Eighth Amendment claim against Jeffreys, Nalewajka, Shah, Pelegrin, Reagan, and Benton for deliberate indifference to Walls's serious medical condition, which causes urinary, stomach and testicular pain and causes him to produce blood, white blood cells, and mucus when urinating.
>
> **Count 2:** Eighth Amendment claim against Pelgrin, Nalewajka, and John Doe for failing to impose a medical hold on Wall resulting in his transfer and delay of medical care.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## PRELIMINARY DISMISSAL

In the Complaint, Walls includes allegations that Dr. Pelegrin did not send him to an audiologist appointment and failed to implement a medical hold despite this needed referral. (Doc. 2, p. 12). To the extent he is attempting to bring claims against Dr. Pelegrin for inadequate treatment of a hearing condition, the claims are dismissed without prejudice. Walls fails to fully plead this claim. He does not describe his medical condition that required an audiology

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

appointment or Dr. Pelegrin's involvement in the treatment of the condition. Walls simply states that she was "supposed to" send him to the audiologist. (Doc. 2, p. 12). Wall has not sufficiently plead that he had a serious medical condition and that Dr. Pelegrin knew of the condition and ignored a substantial risk to his health. Thus, he has failed to state an Eighth Amendment claim regarding treatment for hearing issues.

### Count 1

Count 1 will proceed against Dr. Shah, Dr. Pelegrin, and Nalewajka for failing to treat Walls's urinary issues and associated pain while he was at Centralia.

Count 1 will be dismissed as to Director Jeffreys and Administrative Review Board Member Benton. Walls disagrees with the handling of his grievance date November 17, 2020. (Doc. 2, p. 7, 17, 39, 79). The grievance was received by the ARB months later on April 14, 2021, and denied by Benton as untimely filed. Jeffreys concurred in the decision. Walls states that Benton "clearly didn't investigate the grievance" and denied the grievance without contacting Dixon to make sure that his medical issues had been resolved. He further claims that the grievance was returned to him by Centralia late, after he had already been transferred to Dixon. Walls states he forwarded the grievance to the ARB with a letter explaining why the grievance was being appealed after the 60 day deadline.

The Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *See Jones v. Linn,* No. 19-cv-01307-SMY, 2020 WL 7342694, at *5 (S.D. Ill. Dec. 14, 2020) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)). additionally, the Constitution requires no grievance procedure at all. Thus, Prison officials incur no liability under Section 1983 if they fail or refuse to investigate an inmate's complaints or grievances. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Watson v. Dodd*, No. 16-cv-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017);

*Wilkins v. Ill. Dep't of Corr*. No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009). Furthermore, Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

Benton and Jeffreys cannot be held liable for the inadequate care Walls received while at Centralia. They were notified of the lack of medical care at Centralia after Walls had already been transferred. Therefore, Benton and Jeffreys could not have been deliberately indifferent to his serious medical needs while he was housed at Centralia.[2] They also cannot be held liable for the conduct of others or for the mishandling of Walls's grievance. Thus, Count 1 is dismissed as to Benton and Jeffreys.

Count 1 will also be dismissed as to Dr. Reagan. Walls claims that at his appointment with Dr. Reagan in November 2020, Dr. Reagan did not exam him or take a urine sample because Walls had not been quarantined or received a Covid-19 test. (Doc. 2, p. 10). He goes on to state that Dr. Reagan recommended that Walls have an ultrasound and KUB x-ray, to be conducted at Centralia, and after this diagnostic testing was performed, then Walls could be scheduled to return to Dr. Reagan for a cystoscopy. These allegations do not state an Eighth Amendment claim. The conduct, as described, does not amount to deliberate indifference on the part of Dr. Reagan, which "requires more than negligence and…approaches intentional wrongdoing." *Holloway v. Delaware Cty. Sheriff,* 700 F. 3d 1063, 1073 (7th Cir. 2012). *See also Norfleet v. Webster,* 439 F. 3d 392, 396 (7th Cir. 2006) ("even admitted medical malpractice does not give rise to a constitutional violation"). Deciding not to conduct a physical examination of Walls based on pandemic protocols does meet the high standard required for a deliberate indifference claim.

---

[2] Pursuant to the severance order, this case only involves the alleged conduct by Defendants that occurred during Walls's time at Centralia. Allegations that Walls continues to be denied constitutionally adequate medical care after his transfer to Dixon remained in the original lawsuit. That case was then transferred to the Northern District of Illinois. *See* Doc. 1.

### Count 2

Count 2 will proceed against Pelegrin and Nalewajka for failing to place a medical hold on Walls, allowing him to be transferred to a new facility and resulting in a delay of care. *See McWilliams v. Cook Ct.,* No. , 2018 WL 3970145, at *10 (N.D. Ill. Aug. 20, 2018) (finding that allegations that failing to refer the plaintiff to a specialist or issue a medical hold stated a claim). *See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

Count 2 shall be dismissed against John Doe, transfer coordinator. Walls does not assert any allegations against this individual in the statement of claim. It is not clear if John Doe had any involvement in Walls's medical care or if John Doe even knew that Walls had a serious medical condition. Thus, Count 2 shall be dismissed without prejudice as to John Doe for failure to state a claim upon which relief may be granted.

### INJUNCTIVE RELIEF

In the Complaint, Walls seeks injunctive relief. However, he is no longer at Centralia, so to the extent he is seeking injunctive relief concerning medical staff at that institution, his request is **DENIED as moot.** *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (if a prisoner seeks injunctive relief specific to a particular prison and he is transferred out of that prison, the need for relief becomes moot).

### MOTION FOR SERVICE OF PROCESS AT GOVERNMENT EXPENSE

Walls's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Walls has been granted leave to proceed *in forma pauperis,* and so, the Court is obligated to arrange service on his behalf.

### MOTION FOR RECRUITMENT OF COUNSEL

Walls has filed a Motion for Recruitment of Counsel (Doc. 11), which is **DENIED**.[3] As to the first question, it appears that Walls has made reasonable efforts to obtain counsel on his own before seeking the assistance of the Court. He has included letters from three different firms declining to represent him in this matter. As to the second question, Walls states that he is unable to represent himself because he suffers from a mental illness and seizures, and he is currently in a mental health facility. He states his illnesses will cause delay in this legal proceeding. Nonetheless, the Court finds that Walls is capable of proceeding pro se, at least for now. His pleadings indicate that he can read and write in English effectively. He has some high school education, has drafted a Complaint that has survived preliminary review, and filed motions with the Court. Walls appears competent to try this matter without representation at this early stage. Once discovery has commenced, if Walls has significant difficulty, he may refile his motion.

### MOTIONS FOR STATUS

The Motions for Status are **DENIED** as moot in light of this Order. (Doc. 14, 15).

### DISPOSITION

For the reasons set forth above, **COUNT 1** shall proceed against Dr. Shah, Dr. Pelegrin, and Nalewajka and is **DISMISSED** without prejudice as to Jeffreys, Reagan, and Benton. **COUNT 2** shall proceed against Pelegrin and Nalewajka and is **DISMISSED** without prejudice as to John Doe. As there are no surviving claims Jeffreys, Benton, Reagan, and John Doe, they shall be **TERMINATED** as parties.

Because Walls's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and

---

[3] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

Accountability Act.

The Motion for Recruitment of Counsel is **DENIED.** (Doc. 11). The Motion for Service of Process at Government Expense (Doc. 4) and the Motions for Status (Doc. 14, 15) are **DENIED as moot.**

The Clerk of Court shall prepare for Dr. Shah, Dr. Pelegrin, and Nalewajka the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Walls, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Walls is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:**   April 22, 2022

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.