IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **NIRIN WALLS,** **#R49110,** | |
| Plaintiff, | Case No. 21-cv-01369-SPM |
| v. | |
| **LANA NALEWAJKA,** *et al.*, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions for summary judgment on the issue of exhaustion filed by Defendants Lana Nalewajka, Jodi Pelegrin, and Vipin Shah. (Doc. 56, 64). Plaintiff Nirin Walls filed responses in opposition. (Doc. 59, 61, 70). Defendants Pelegrin and Shah filed a reply brief. (Doc. 63). For the following reasons, the motions for summary judgment will be denied.

### BACKGROUND

Plaintiff Nirin Walls, an inmate in the custody of the Illinois Department of Corrections, originally began prosecuting his claims by initiating case *Walls v. Jeffreys*, No. 21-cv-01350-SMY, on October 27, 2021. In *Walls v. Jeffreys*, Plaintiff alleged that he received constitutionally inadequate medical care for urinary issues and associated pain while incarcerated at Centralia Correctional Center and Dixon Correctional Center. On November 1, 2021, Judge Yandle found that Plaintiff's claims were improperly joined in the same action and severed Plaintiff's allegations regarding inadequate medical care that occurred while he was incarcerated at Centralia Correctional Center into a new lawsuit, and this case was opened. (*See* Doc. 1).

Relevant to this case, Plaintiff alleges that in July 2020, while at Centralia Correctional Center ("Centralia"), he began urinating blood, white blood cells, and mucus. Plaintiff had an appointment with Dr. Shah, but Dr. Shah did not prescribe any medication for his condition. After several sick call requests, Plaintiff was seen by Dr. Pelegrin, who prescribed an antibiotic. The antibiotic did not work, and so, Dr. Pelegrin prescribed a second antibiotic. The second antibiotic also did not relieve Plaintiff's symptoms, and Plaintiff asked Dr. Pelegrin to send him to the emergency room. She refused. At that time, Plaintiff also complained of severe pain in his testicles and stomach. Dr. Pelegrin then prescribed phenazopyridine. After Plaintiff took the medication, the bleeding became worse. The blood in his urine increased from "++" in August 2020 to "50" in December 2020.

On November 24, 2020, Plaintiff had an appointment with an outside specialist, Dr. Reagan. Dr. Reagan was unable to exam Plaintiff, however, because proper Covid-19 protocols were not followed prior to the visit. Dr. Reagan told Plaintiff that Plaintiff needed an ultrasound and a "KUB." He said Plaintiff should return after these diagnostic tests were performed.

On December 9, 2020, the pain increased, and Plaintiff felt like he was urinating nails. Dr. Pelegrin did not take any action. Dr. Pelegrin did not follow-up with the diagnostic tests recommended by Dr. Reagan and did not prescribe Plaintiff any pain medication or any other medicine for his condition. Dr. Pelegrin and Health Care Unit Administrator Nalewajka allowed Plaintiff to be transferred to Dixon Correctional Center in February 2021, despite the fact that he should have had a medical hold in his record. The transfer resulted in further delay in treatment.

Following a review of Plaintiff's allegations concerning the events at Centralia pursuant to 28 U.S.C. §1915A, Plaintiff was allowed to proceed with the following claims:

> Count 1: Eighth Amendment claim against Nalewajka, Shah, and Pelegrin for deliberate indifference to Plaintiff's serious medical condition,

> which causes urinary, stomach and testicular pain and causes him to produce blood, white blood cells, and mucus when urinating.

Count 2: Eighth Amendment claim against Pelgrin and Nalewajka for failing to impose a medical hold on Plaintiff resulting in his transfer and delay of medical care.

(Doc. 16).

Defendants argue that Plaintiff has failed to properly exhaust his administrative remedies prior to initiating this lawsuit, as is required by the Prison Litigation Reform Act, 42 U.S.C. §1997e. Specifically, Dr. Shah and Dr. Pelegrin argue that the grievances relevant to Plaintiff's allegations of inadequate treatment as alleged in Count 1 were all denied on procedural grounds, and Plaintiff did not include complaints regarding his transfer and failing to implement a medical hold as alleged in Count 2 in any of his grievances. (Doc. 57). Defendant Nalewajka also argues that Plaintiff failed to file any grievances regarding his claims that she failed to impose a medical hold resulting in his transfer and delay of medical care. (Doc. 65).[1]

In response, Plaintiff argues that he did properly file grievances that alerted prison officials to the nature of his complaints and that several of his grievances went missing hindering his ability to use the grievance process. (Doc. 59, 70).

## SUMMARY JUDGMENT

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck &*

---

[1] Defendant Nalewajka does not argue that Plaintiff failed to exhaust his administrative remedies as to Count 1 against her.

*Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal,* 745 F. 3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate confined in the Illinois Department of Corrections, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to properly exhaust his administrative remedies. 20 ILL. ADMIN. CODE § 504.800, *et seq*. According to the grievance process, an inmate must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a

counselor, the grievance is considered by a grievance officer who must render a written recommendation to the chief administrative officer — usually the warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id.* §504.830(e). The chief administrative officer then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the chief administrative officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. 20 ILL. ADMIN. CODE §504.850(a). The ARB will submit a written report of its findings and recommendations to the director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE §504.850(d) and (e). The inmate is then sent a copy of director's decision. *Id.* §5043850(e).

An inmate can request that a grievance be handled as an emergency by forwarding it directly to the chief administrative officer. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.*

## ANALYSIS

The Court will first address whether Plaintiff has exhausted his claims against Dr. Shah and Dr. Pelegrin for inadequate medical care as alleged in Count 1. The parties agree that relevant to this claim is Grievance #20-11-184, dated November 17, 2020. (Doc. 57-1, p. 10-11). In the grievance, Plaintiff writes that on November 17, 2020, he asked a correctional officer to call health care because he, Plaintiff, was urinating blood "for like 4 months now and its documented in medical records." (*Id.*). He goes on to state:

> I have taken several antibiotics pills and clearly medication is not working over 3 different antibiotics, after the first antibiotic didn't work I should have been sent

> out to see urologist outside hospital- I complained over 10 times to Doctor Pelegrin and several nurses told me over 30 days that I'm going to be sent out to outside hospital "urologist" never went…now my pain and bleeding is way worser than a hernia…also I feel so much pain in my stomach and testicles that if feel like I have been kicked in the nuts…All this I told all nurses and Doctor Pelegrin back in July or August Doctor Shah looked at my urine test and told me clearly very clearly that I may need to go to outside hospital urologist…

(*Id.*). The counselor responded on December 4, 2020, by writing "Per HCUA: Offender went to see a urological specialist 11/24/2020 for the complaints voiced in the grievance." (*Id.*). The grievance officer responded on March 5, 2021, by recording that Plaintiff saw a specialist on November 24, 2020. (*Id.* at p. 9). The grievance counselor also wrote the Plaintiff's medical concerns were addressed and that Plaintiff had since transferred to Dixon Correctional Center. The grievance counselor recommended that the grievance be partially upheld, and the chief administrative officer concurred. (*Id.*). Plaintiff appealed the grievance to the ARB on April 7, 2021. The ARB reviewed the grievance on June 3, 2021, and denied Plaintiff's complaints against the correctional officer as unsubstantiated. The ARB found that the medical issues of blood in the urine for four months was over the 60-day timeframe for filing grievances within 60 days of the occurrence. (*Id.* at p. 8).

Defendants Shah and Pelegrin argue that this grievance cannot serve to exhaust Plaintiff's claims against them regarding inadequate care for his urinary issues and associated pain because the ARB dismissed the medical treatment complaints not on the merits but procedural grounds. (Doc. 57, p. 8). They contend that the event that precipitated Grievance #20-11-184 occurred sometime in July or August 2020, but Plaintiff did not submit the grievance until November 17, 2020, more than 60 days after the conduct described. Because the ARB denied the grievance due to untimeliness, his grievance was not exhausted. (*Id.*).

In support of their argument, Defendants cite to *Gara v. Kelley,* a decision from this district.

No. 10-cv-0769-MJR-SCW, 2012 WL 3683559, at *4 (S.D. Ill. July 13, 2012). In *Gara v. Kelley,* the court found that the inmate had failed to exhaust when officials at the correctional center denied his grievance on the merits, but the ARB denied the grievance because it was untimely filed at the institution. 2012 WL 3683559, at *5 (citing *Sylvester v. Chandler,* No. 07-C50050, 2010 WL 3420385, at *2-4 (N.D. Ill. Aug. 27, 2010), *mag. report and recomm. adopted by* 2012 WL 3683556 (S.D. Ill. Aug. 24, 2012). Recognizing the "divergent paths" that district courts in this circuit have taken "when confronted with this issue," the court found that the "ARB should have the same chance as institution-level officials to address any potential policy changes or internal problems before litigation arises…Otherwise the ARB would lose meaningful opportunity for oversight because it would be limited to using stale recollections and potentially-shoddy evidence to make its policy decisions." *Id.* at *6. The court went on to reason that "to allow the entire state prison system a chance to identify the procedural defects of a prisoner's grievance and to rely on those defects in choosing not to face a decision on the merits in federal court," aligns with the PLRA's "balance between state administrative law and federal court power." (*Id.* at p. *7).

While other district courts have followed the reasoning in *Gara v. Kelley,* (*see Calderson v. Wexford Health Sources, Inc.,* No. 21-cv-1061-DWD, 2023 WL 1100261, at *3 (S.D. Ill. Jan. 30, 2023)), this does not seem to be the approach of most of the courts in this circuit. *See Escobedo v. Miller,* No. 08-2017, 2009 WL 2605260, at *5 (C.D. Ill. Aug. 25, 2009); *Ford v. Wexford Health Source,* No. 13-cv-42-JPG, 2014 WL 685841, at *5 (S.D. Ill. Feb. 20, 2014); *Kane v. Santos,* No. 17-cv-01054, 2020 WL 967878, at *1 (S.D. Ill. Feb. 28, 2020)*; Shakur v. Swalls,* No. 20-cv-00043-GCS, 2021 WL 3603490, at *3 (S.D. Ill. Aug. 13, 2021); *Venson v. Gregson,* No. 18-cv-2185-MAB, 2021 WL 2948817, at *5-6 (S.D. Ill. July 14, 2021); *Anderson v. Rabideau,* No. 19 C 6535, 2022 WL 4465925, at *6 (N.D. Ill. Sept. 26, 2022) (collecting cases). These courts have found that

when officials at the correctional facility address a grievance on the merits, the ARB cannot "later examine the grievance on procedural grounds to cure the error." *Kane,* 2020 WL 967878, at *4. Looking to the Illinois Administrative Code, these district courts have recognized that the "discretion to decide an untimely filed grievance on the merits lies with the grievance officer." *Id.* (citing 20 ILL. ADMIN. CODE. §504.180(a)). *See also Anderson,* 2022 WL 4465925, at *3 ("state regulations give the Grievance Officer discretion to consider an untimely filed grievance on the merits if good cause exists"). "If facility officials elect to address an untimely grievance on the merits and not reject it on timeliness grounds, then they have treated the grievance as properly filed," *Venson,* 2021 WL 2948817, at *6, and indicated that they "had information necessary to investigate the plaintiff's claims adequately." *Shakur,* 2021 WL 3603490, at *3. Thus, when the institutional officials address the grievance on the merits, defendants cannot rely on the decision by the ARB to reject the grievance as untimely to argue that a plaintiff failed to exhaust his administrative remedies. *See Ford,* 2014 WL 685841, at *5.

Despite the conflicting law, the Court does not need to address the issue in this case because the ARB wrongly denied Plaintiff's medical complaints contained in Grievance #20-11-184 as untimely. Plaintiff argues that his grievance served to exhaust his claims because the "violations were repetitive and involved the same medical issue and Defendants. (Doc. 59, p. 8). He "clearly stated Defendant kept refusing to send [him] to outside hospital." (*Id.* at p. 9). The Court agrees. In denying Grievance #20-11-184, the ARB wrongly focused on Plaintiff's assertion that he originally told Dr. Shah and Dr. Pelegrin about his symptoms "back in July or August." (Doc. 57-1, p. 10). The ARB did not review the content of the grievance in its entirety or consider the assertions that he has been urinating blood for the past four months, the medication he has been given is not working, his symptoms are worsening, and he continues to complain to medical staff.

Plaintiff's complaints did not only pertain to a particular incident that occurred in July or August, but they were current and continuing wrongs. These types of "complaints do not lend themselves to a requirement that following each 'incident', Plaintiff must file a grievance within sixty days. *Barrow v. Wexford Health Sources, Inc.,* 2015 WL 11539508, at *6 (S.D. Ill. July 16, 2015) (citing *Wilder v. Sutton*, 310 F. App'x 10, 15 (7th Cir. 2009) (noting that the argument that the grievance was untimely was "frivolous" as the harm alleged was not a particular "'incident' but a continuing wrong")). *See also Billups v. Butalid*, No. 16-cv-84-DGW, 2017 WL 4284544, at *4 (S.D. Ill. 2017) (finding that the ARB wrongly denied a grievance as untimely when it did not consider the content of the grievance stating that the plaintiff's medical issues were "on-going problems"). Thus, because Plaintiff's complaints were ongoing at the time he submitted Grievance #20-11-184, the grievance was timely filed. Additionally, the grievance sufficiently put officials at Centralia on notice that Dr. Shah and Dr. Pelegrin were two of the medical providers who were aware of Plaintiff's medical issues and were not adequately addressing them. For these reasons, the Court finds Plaintiff sufficiently exhausted his claims in Count 1 as to Shah and Pelegrin.[2]

As to Count 2, Defendants Pelegrin and Nalewajka both argue that Plaintiff did not file a grievance complaining about a lack of a medical hold or his transfer to Dixon Correctional Center negatively impacting his medical care. (Doc. 57, p. 9; Doc. 65, p. 7). Plaintiff argues in response that he attempted to grieve these issues but was obstructed from completing the grievance process. (Doc. 59, p. 2). He states that on February 1, 2021, the day before he was transferred to Dixon Correctional Center, he filed Grievances #E-21-2-25, #E-21-2-40, and #21-2-41. (Doc. 70, p. 2). He asserts that he wrote these grievances specifically about being transferred and that he was

---

[2] Because Grievance #20-11-184 served exhaust Plaintiff's claims in Count 1 as to Dr. Pelegrin and Dr. Shah, the Court will not address Grievance #211109 also submitted by Defendants in support of their motion for summary judgment.

supposed to have a medical hold for his urology visits and other medical conditions. (*Id.*). He points out that these grievances are recorded in the grievance log, but he has never received responses or copies despite his requests. (*See Id.* at p. 5-6).

While strict compliance with the exhaustion requirement is the rule in this Circuit, an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Wallace v. Baldwin*, 55 F.4th 535, 542-44 (7th Cir. 2022). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642; *Reid v. Balota,* 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Dole*, 438 F.3d at 809 (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedure). The Court finds that Plaintiff has presented evidence creating a disputed issue of fact regarding whether the grievance process was available to him. As he states, the grievance log submitted by both Defendant Nalewajka and Plaintiff show that the missing grievances were documented as being received by Centralia staff. (Doc. 65, p. 30). In the log, Grievance #E-21-2-25 is recorded as being received on February 1, 2021, and described as complaining staff conduct and "medical tx." Grievances #E21-2-40 and #21-2-41 are recorded as being received February 3, 2021, and grieve "multiple items." (*Id.*). Plaintiff sent requests seeking copies of the grievances, but he has not received them.[3] Nor have Defendants filed these grievances with their motions for summary

---

[3] On February 8, 2021, Plaintiff sent an offender request slip asking that the Centralia grievance office be instructed to forward all grievances to him at Dixon. (Doc. 70, p. 9). He received a response that his grievances would be forwarded "as they go through the process at [his] previous facility. Some will need to be answered there [first]." (Id.). On March 23, 2021, Plaintiff submitted another offender request slip again inquiring about grievances he submitted at Centralia prior to his transfer. (Doc. 70, p. 7). The staff member responded that she mailed the grievances to him when they were received from Centralia. The staff member informed Plaintiff he could "request copies of them from records and we can try and process from there." (Id.). On May 17, 2021, Plaintiff submitted a request to the records office asking for copies of Grievances #E-21-2-25, #E-21-2-40, #21-2-23, and #21-2-41 "all from Centralia." (Id. at p. 11). The records office responded, "These Grievances have not made it into your master filed yet. Please check

Page 10 of 13

judgment. The fact that grievances were properly submitted at the initial stage of the grievance process and have gone missing supports Plaintiff's claim that he did not receive responses from the grievances once filed and was hindered from fully exhausting. Thus, the Court cannot say as a matter of law that Defendants have met their burden of demonstrating that Plaintiff had available remedies that he did not utilize in attempting to exhaust his claims in Count 2 against Pelegrin and Nalewajka. A hearing is required to resolve this disputed issue of fact. *See Pavey*, 544 F. 3d 739.

If Defendants would like to pursue this affirmative defense for failure to exhaust administrative remedies any further at this point, they must request a *Pavey* hearing within fourteen days. If a hearing is requested, the issues the Court would consider are limited to Plaintiff's claims in Count 2 and whether he properly submitted grievances regarding the lack of a medical hold and his transfer to Dixon Correctional Center that went unanswered. The parties will be expected to present evidence only on these issues, if a *Pavey* hearing is held. If Defendants do not request a *Pavey* hearing, the Court will enter a new scheduling and discovery order lifting the stay on merits discovery, or the parties may request that the case be referred for a settlement conference.

## MOTION TO STRIKE

On March 20, 2023, after filing responses to both motions for summary judgment, and after Defendants Pelegrin and Shah had filed a reply brief, Plaintiff filed an untitled document. (Doc. 71). The Clerk of Court filed the document as a supplement to Plaintiff's response in opposition. (Doc. 71). In the document, Plaintiff seeks to add exhibits to his responses to the motions for summary judgment to demonstrate that his ability to exhaust his administrative remedies was obstructed. Defendants Pelegrin and Shah filed a motion to strike the document arguing that the filing amounts to a sur-reply, which is prohibited under the local rules. (Doc. 72). Defendants

---

back in a few weeks." Plaintiff also filed grievances seeking copies of his grievances, Grievance #211109, dated March 18, 2021, and Grievance #211410, dated April 6, 2021 (Doc. 65, p. 22, 26). Both grievances were denied.

further argue that the document should also not be allowed to the extent Plaintiff is filing a supplement, as again, he has not followed the local rules. The local rules allow a party to file supplements only with leave of the court and for the purpose of briefing new authority "due to a change in the law or facts that occurred after the filing of its brief." SDIL-LR 7.1(c).

The Court construes Plaintiff's filing as a motion to supplement his responses with additional exhibits, and the request is **DENIED**. Generally, the Court is lenient with pro se litigants and will permit supplements to briefings. However, in this case, allowing the supplement would only serve to delay resolution of the pending motions for summary judgment, as Defendants must be given adequate time to reply to the supplemental arguments and exhibits. Further, except for the copy of a custody request inquiring about grievances sent by Plaintiff on February 24, 2023 (Doc. 71, p. 4), all the other exhibits contained in the supplement are already in the record. Plaintiff has successfully presented sufficient evidence to demonstrate a disputed issue of fact regarding whether his administrative remedies were available without the Court considering the February 24 custody request and response. If Defendants request a *Pavey* hearing, the Court will consider this additional document. Because the Court is denying the motion to supplement, there is no reason to strike the filing and the motion to strike is **DENIED.** (Doc. 72).

## DISPOSITION

For the reasons stated above, the motions for summary judgment on the issue of exhaustion filed by Defendants Shah, Pelegrin, and Nalewajka are **DENIED**. (Doc. 56, 64). The Court finds that Plaintiff exhausted his administrative remedies as to Count 1 and demonstrated a debatable factual issue regarding whether the administrative process was available to him in attempting to grieve the allegations in Count 2.

Defendants must file a notice within fourteen (14) days of this Order either withdrawing

their affirmative defense based on exhaustion of administrative remedies for Count 2 or requesting a *Pavey* hearing. Failure to file a notice by this deadline and in compliance with this Order will result in a waiver of this affirmative defense for Count 2.

The motion to supplement filed by Plaintiff Walls is **DENIED.** (Doc. 71). The motion to strike filed by Defendants Pelegrin and Shah is **DENIED.** (Doc. 72).

**IT IS SO ORDERED.**

**DATED:   September 20, 2023**

                                                   *s/Stephen P. McGlynn*
                                                **STEPHEN P. MCGLYNN**
                                                **United States District Judge**